IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REVEREND ROBERT W. POVISH,<br><br>              Plaintiff,<br><br>      v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JOHN E. WETZEL, in his official capacity as Secretary of the Pennsylvania Department of Corrections, MICHAEL WENEROWICZ, in both his official capacity as Superintendent of the State Correctional Institution at Graterford, and in his individual capacity, and MICHAEL ROMASCAVAGE, in both his official capacity as personnel officer of the State Correctional Institution at Graterford, and in his individual capacity,<br><br>              Defendants. | CIVIL ACTION<br>NO. 13-0197 |

**MEMORANDUM**

**SCHMEHL, J.**                                                                                                                                 **March 28, 2014**

      Plaintiff, a former chaplain with the Pennsylvania Department of Corrections, brings suit against the Department and several individuals, primarily based on alleged defamation in connection with his termination. He also challenges the termination itself. Defendants' motion to dismiss asserts a web of immunities, failure to exhaust, and simple insufficiency of the claims. The Court will grant much of the motion to dismiss with prejudice. Plaintiff will be left with narrow official-capacity §1983 claims, potential individual-capacity §1983 claims pending further examination of qualified immunity, and an opportunity to amend his Title VII and individual-capacity PHRA claims.

Factual and Procedural Background

Plaintiff Reverend Robert Povish worked for Defendant Pennsylvania Department of Corrections[1] as a Catholic chaplain at SCI-Graterford. In early March of 2011, the Archdiocese of Philadelphia put Plaintiff on administrative leave. Plaintiff informed his superiors of the leave, which was then confirmed by a letter from the archdiocese to the Department explaining that the leave was "based on boundary violations with minors" but that there were no allegations rising "to the level of sexual abuse of a minor." The letter stated that Plaintiff did "not have the permission from the Archdiocese to act as Chaplain for the State Correctional Institute at Graterford."

Plaintiff alleges that Defendant Michael Wenerowicz, Superintendent at SCI-Graterford, initially said that Plaintiff would be able to continue working, handling unspecified administrative duties that did not require him to have permission to serve in a religious capacity. Nevertheless, within days, on March 10, 2011, the Department suspended Plaintiff without pay or benefits. During his suspension, Plaintiff applied for Unemployment Compensation benefits; according to the parties, he was found eligible on April 12, 2011, and the Department appealed.[2]

---

[1] Defendant John Wetzel is sued only in his official capacity as Secretary of the Department, and Plaintiff has not alleged he had any direct involvement in the circumstances of the case.

[2] The story reflected in Defendants' motion exhibits D6-D8 seems inconsistent with the parties' description of the unemployment proceedings. The parties basically agree that Plaintiff was initially found eligible for benefits, after which the Department appealed, and the Referee affirmed Plaintiff's eligibility because he was still able to do the part of his job that did not require permission from the archdiocese. But the initial determination, D6, states that while the Department had not proven Plaintiff violated a work rule, Plaintiff had failed to prove he was able and available for work due to religious reasons and was therefore *ineligible* for benefits. Exhibit D7 does show the Department appealed. The Referee's decision, issued the same day as the hearing, concludes that Plaintiff was able and available for work and thus eligible for benefits (it also lists the initial determination as "eligible," apparently incorrectly). However, it also states that Plaintiff was permitted to perform spiritual duties but not administrative duties, the exact opposite of what appears to be the case. It would be inappropriate for the Court simply to recapitulate the parties' statements of fact without noting this confusion, but whether the unemployment proceedings unfolded coherently or not, the only aspects of those proceedings relevant to resolution of the motion to dismiss are Defendants' allegedly defamatory statements.

2

Plaintiff alleges that in the unemployment appeal papers and at the hearing, Defendant Michael Romascavage, a personnel officer at SCI-Graterford, made a number of defamatory remarks. Plaintiff says Romascavage incorrectly stated that Plaintiff had committed or was suspected of sexual misconduct, rather than the lesser but ill-defined "boundary violations with minors." Further, Romascavage stated that Plaintiff could himself become an inmate of the corrections system as a result of the conduct for which he was placed on leave, and Deputy Superintendent Harry (not named in the suit) wrongly indicated that Plaintiff had been defrocked. Romascavage also allegedly provided materials to the unemployment authorities incorrectly insinuating that Plaintiff was part of a grand jury report on sex abuse by priests. Finally, Plaintiff vaguely alleges that Romascavage and Plaintiff's supervisor (also not named in the suit) spread these false impressions about sexual misconduct and possible criminal liability among Plaintiff's coworkers.

Immediately after the Referee's decision affirming Plaintiff's eligibility for unemployment compensation, Defendants notified Plaintiff of a Pre-Disciplinary Conference to take place three days later, on June 21, 2011. The notice advised Plaintiff that the conference would concern two possible violations: first, violation of the Department's code of ethics regarding off-duty conduct, related to accusations of child sexual abuse; second, failure to meet the job requirement of sanction by the appropriate faith group to practice as a religious leader. The conference was held at SCI-Graterford, with Plaintiff, Romascavage, Deputy Superintendent Harry, and a clerk from the personnel office in attendance. Romascavage repeatedly asked questions about potential misconduct with minors at the prison. Following the conference, Defendants issued a

letter terminating Plaintiff, signed by Defendant Wenerowicz and indicating that he had reviewed the facts and the discussion at the conference. The letter indicated Plaintiff was terminated for failure to have the archdiocese's permission to act as chaplain, and further states that the charge for violation of the ethical rules on off-duty conduct had been dismissed.

Plaintiff filed an EEOC charge, which was dismissed, and received a right-to-sue letter in October of 2012. He filed the complaint in this matter on January 14, 2013. Defendants filed the present motion to dismiss on March 4, 2013, and the case was reassigned from the Honorable James Knoll Gardner to the undersigned on August 6, 2013.

Discussion

Plaintiff's complaint asserts five counts: Count I, disparate treatment under Title VII against the Department; Count II, deprivation of liberty interest in reputation under 42 U.S.C. §1983 against all Defendants; Count III, disparate treatment and aiding and abetting disparate treatment under the PHRA against all Defendants; Count IV, defamation against Romascavage; and Count V, intentional infliction of emotional distress against Romascavage. For reasons set forth below, the Court will dismiss certain claims with prejudice and allow Plaintiff to maintain or amend limited aspects of others.

Count I: Disparate Treatment under Title VII against the Department

As an initial matter, Defendants' argument that Plaintiff has failed to establish exhaustion of administrative remedies is unavailing at this point. As failure to exhaust is

an affirmative defense, defendants have the burden of proof. *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997). Determination of whether a plaintiff has failed to exhaust requires examining the EEOC charge and proceedings more closely than simply checking the face of the right-to-sue letter. *See Meyers v. California Univ. of Pa.*, 2:12-CV-1258, 2013 WL 795059 (W.D. Pa. Mar. 4, 2013) (citing *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 886-87 (3d Cir. 1977)). Defendants here have not pointed to anything beyond the right-to-sue letter that would enable the necessary deeper analysis.

But the Department also challenges the claim as implausible, and it is indeed difficult to work out Plaintiff's precise theory. In the complaint itself, he seems to argue that he was discriminated against as a Roman Catholic because he was fired after being unfairly tarnished by the publicized bad conduct of other Roman Catholic priests, but he was replaced by another Roman Catholic, which of course was an inherent requirement for the job. In his brief, Plaintiff seems to suggest that the disparate treatment at issue is his termination under circumstances where others were permitted to continue their employment and perform administrative duties. But Plaintiff has offered no specifics whatsoever regarding who these others were or how they were similarly situated. *See Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) ("comparator employees must be similarly situated in all relevant respects," the determination of which "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in"), *cert. denied*, 132 S. Ct. 1645 (U.S. 2012). That theory of disparate treatment seems tenuous, but Plaintiff should be permitted an opportunity to amend his complaint and provide sufficiently

specific allegations to support a claim on that basis, if the facts indeed warrant. Therefore, Count I is dismissed without prejudice.

### Count II: Deprivation of Liberty Interest in Reputation against All Defendants

In his second count, Plaintiff asserts a claim under 42 U.S.C. §1983 for deprivation of a liberty interest in his reputation based upon his termination in conjunction with statements that falsely overstated the verity and severity of the allegations for which Plaintiff was suspended by the archdiocese. The claim is barred entirely against the Department, the official-capacity claims are limited to narrowly-defined injunctive relief, and the individual-capacity claims are viable but may be prohibited by qualified immunity.

Plaintiff's §1983 claim is significantly limited by the Eleventh Amendment, which bars suits in federal court against states or agencies that are arms of states unless the state consents. *See Smith v. Sec'y of Dep't of Envtl. Prot. of Pa.*, 540 F. App'x 80, 81-82 (3d Cir. 2013), *cert. denied*, 134 S. Ct. 1053 (U.S. 2014). Defendants do not argue that the Eleventh Amendment bars the individual-capacity claims, so Plaintiff's protestations to the contrary are unnecessary. But Plaintiff's repeated reliance on *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), is entirely misplaced. The effect of *Monell* is to allow suit against municipalities, not the states themselves or agencies thereof. *See O'Hara v. Indiana Univ. of Pa.*, 171 F. Supp. 2d 490, 499 (W.D. Pa. 2001). Eleventh Amendment immunity also generally bars suits against individual state officials in their official capacity. *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21

(1991). Initially, therefore, the §1983 claim is invalid against the Department of Corrections and all three individuals in their official capacities.

There is, however, an exception to Eleventh Amendment immunity that allows suit in federal court against state officials in their official capacities for "prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155-156, 159 (1908)). The exception applies only to officials, not states or agencies themselves, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984), so it does not save Plaintiff's claim against the Department of Corrections. Even with regard to officials, the exception is narrow. *See Pennhurst*, 465 U.S. at 102 ("the theory of *Young* has not been provided an expansive interpretation"). Considering "the substance rather than the form of the relief requested," *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996), if the relief sought does not actively serve to cut off an ongoing violation of federal law, it does not "vindicate the federal interest in assuring the supremacy of" federal law, *Green*, 474 U.S. at 68.[3]

Plaintiff argues that reinstatement and front pay are permissible under this exception to the Eleventh Amendment. Broadly speaking, front pay may be considered equitable. *See Brown v. Nutrition Mgmt. Servs. Co.*, CIV.A 06-2034, 2010 WL 2902557 (E.D. Pa. July 22, 2010). But even assuming Defendants are presently engaged in a continuing deprivation of Plaintiff's liberty interest in his reputation, awarding front pay would not put an end to that deprivation or restore his reputation, so the Eleventh

---

[3] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), holds that states and their officials acting in official capacity are not "persons" under §1983. Though based on the language of §1983 rather than the Eleventh Amendment, in the context of this case, the *Will* analysis has the same contours, including an exception for prospective injunctive relief that ends a continuing violation of federal law. *Will*, 491 U.S. at 71 n. 10. *Will* thus affords a separate, additional basis for dismissing the same aspects of the §1983 claim.

7

Amendment prohibits that remedy in this case. *See Blanciak*, 77 F.3d at 698 ("We find appellants' § 1983 'front pay' claims to be neither prospective nor equitable . . . . Appellants' specific allegations target past conduct . . . . Rather than vindicating federal rights by holding state officials accountable to the Constitution, we believe that 'front pay' relief, under the circumstances of this case, would provide nothing more than compensatory damages which would have to be paid from the Commonwealth's coffers."). Further, it is not yet clear that Defendants are in any real sense *continuing* to deprive Plaintiff of his liberty interest in his reputation—his termination is theoretically continuing and is a part of his claim, but the reputation damage is based on particular statements made in the past—so even reinstatement would be a questionable remedy under the Eleventh Amendment in this case. Nevertheless, as the facts develop, the Court may find appropriate either reinstatement or some other form of prospective injunctive relief, so the official-capacity claims remain viable in that limited respect at present.

  Moving to the substance of the claim, a due process claim for deprivation of a liberty interest in reputation requires a plaintiff to show false, stigmatizing, publicly made statements plus deprivation of another interest (including termination from a public job in which there is not an independent property interest). *See Hill v. Borough of Kutztown*, 455 F.3d 225, 235-36 (3d Cir. 2006). Defendants' efforts to demonstrate Plaintiff's inability to make out such a claim are unpersuasive.

  First, Defendants argue the defamatory statements were not public because they were made in a confidential unemployment compensation hearing. Although amendments to the administrative code that took effect shortly before Plaintiff's application for unemployment compensation do provide for certain confidentiality, *see* 34 Pa. Code §

61.25, it is unclear how confidential an unemployment compensation hearing is. At the very least, statements made during the unemployment compensation review process could become public if appeals are pursued because the Commonwealth Court continues to include facts and identifying information in its written opinions. *See, e.g.*, *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 (Pa. Commw. Ct. 2014).

Whether or not the confidentiality argument is valid, Plaintiff further alleges that Defendants gossiped about Plaintiff in the workplace and that Plaintiff's coworkers, hearing defamatory statements from Defendants, came to the false conclusion that Plaintiff "was taken out in handcuffs." Those assertions are sufficient to allege publication at this stage. The Second Circuit, at least, has made clear that "[i]n determining the degree of dissemination that satisfies the 'public disclosure' requirement, we must look to the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities." *Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.*, 820 F.2d 41, 44 (2d Cir. 1987). Depending on the facts, quite limited dissemination may be sufficient. *See McCleester v. Mackel*, CIV.A. 06-120J, 2008 WL 821531 (W.D. Pa. Mar. 27, 2008) (noting that while there is no controlling precedent, some courts treat publication for a §1983 reputation claim as analogous to common-law defamation and hold that communication to a single third party is sufficient); *see also Brandt,* 820 F.2d at 45 (finding that even placing stigmatizing statements in a personnel file can be sufficient publication if prospective employers are likely to see them); *Quinn v. Ltd. Exp., Inc.*, 715 F. Supp. 127, 128 (W.D. Pa. 1989) (finding, in a non-constitutional slander case, that the privilege for

9

communication of defamatory statements to supervisors does not permit communication to non-supervisory employees).

Second, Defendants argue that the stigma was already present because the investigation and suspension by the archdiocese were public. But the complaint alleges defamatory statements beyond what was otherwise public. While the distinction between "boundary violations with a minor" and "sexual abuse" is unclear and less beneficial to Plaintiff's case than he maintains, the alleged stigmatizing statements do make the accusations against Plaintiff sound more serious and more likely to be true than what was already public.

The remainder of Defendants' argument against the substance of the §1983 claim is more difficult to analyze. The unusual arrangement of this case—namely, that the conduct underlying the allegedly false stigmatizing remarks (sexual misconduct) is arguably not the reason he was terminated (lack of permission from the archdiocese)—is certainly a confounding feature of the case. Can there be a "stigma-plus" claim where there is a reason for termination independent of the stigma? And is a hearing sufficient if it enables a plaintiff to protect himself from being terminated for false, defamatory reasons, but he is still terminated for another reason?

Defendants claim the termination cannot qualify as a "plus" element for the stigma-plus test because Plaintiff's suspension by the archdiocese means he would have been terminated regardless of the defamation. But the Court has failed to find cases holding that a "stigma-plus" claim fails if the termination or other "plus" factor would still have occurred if the defamatory statements were discounted, or that the employer has to have fired the employee because of the negative trait or conduct of which the

employee has been falsely accused. If an employer fires someone for a legitimate reason but announces to the public a false, defamatory reason, that person may still face lowered standing in the community and unwarranted difficulty in finding new employment. Here, the defamatory statements certainly "occurred in relation to [Plaintiff's] termination." *Boone v. Pa. Office of Vocational Rehab.*, 373 F. Supp. 2d 484, 498 (M.D. Pa. 2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) ("plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment").

Because §1983 reputation claims rest on procedural due process, there is no constitutional violation if a claimant has received the necessary process, which in the context of liberty interest in reputation means a name-clearing hearing. *Graham v. City of Phila.*, 402 F.3d 139, 144 (3d Cir. 2005). Determination of what constitutes a sufficient hearing relies on the factor balancing set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Graham*, 402 F.3d at 145-46. The factors are: the plaintiff's interest; the risk of wrongful deprivation and likely value of any additional procedural safeguards; and the government's interest and its burden in employing additional procedures. *See Mathews*, 424 U.S. at 335. As with the publication requirement, the Court must bear in mind that the purpose of the process due is balanced protection of "the plaintiff's reputational interest, and how that interest can effect [sic] his standing in the community and his future job prospects." *Patterson*, 370 F.3d at 336.

In the present case, the Pre-Disciplinary Conference might seem clearly sufficient by reference to the second factor. The termination letter[4] that resulted from the

---

[4] The Court's consideration of the termination letter, attached as an exhibit to Defendants' motion, is proper. Plaintiff's claim is based on his termination, and the complaint notes the two separate issues that

11

conference noted dismissal of the accusations that Plaintiff had violated his ethical rules by committing the kind of sexual abuse suggested by the allegedly defamatory statements; if the hearing allowed Plaintiff to clear up the falsity of the defamatory statement but he was nevertheless fired for another reason, what could additional procedures have accomplished? The answer is that Plaintiff's interest is not merely or even primarily preventing his termination. His interest is righting the damage to his standing in the community and future job prospects. A non-public disciplinary conference and a termination letter clearing him of the stigma-related conduct may not have done that.[5] At this stage, the only appropriate conclusion is that greater development of the facts is necessary to determine the extent of the damage and what procedures would have given Plaintiff an opportunity to clear up his reputation. It is possible that such process might involve some way of making the name-clearing more public, rather than a more thorough hearing. *See Patterson*, 370 F.3d at 337 (noting, where stigmatizing statements had appeared in the newspaper, that a shortcoming of the name-clearing process given to the plaintiff was that the employer had not made a public statement to correct the false public impression).

Finally, having found that Plaintiff has sufficiently alleged a constitutional violation, the Court must consider qualified immunity. "[T]he qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

were the subject of the hearing and states that Plaintiff was formally terminated following the hearing. Further, neither the complaint nor Plaintiff's response to the motion to dismiss disputes the letter's authenticity or contradicts the account it presents. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Boone*, 373 F. Supp. 2d at 490.

[5] Given the possibility that the conference did satisfy the requirement of a name-clearing hearing, and the possibility that even if it did not, Plaintiff might well have felt requesting an additional hearing would be fruitless, the Court will not dismiss based on Plaintiff's failure to request a hearing.

reasonable person would have known." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996)). Consideration of whether a right is clearly established must not look at the level of abstract rights, but at whether the official would reasonably have known his specific action would violate a right. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); *see also Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 612-13 (M.D. Pa. 2013), *aff'd*, 13-1573, 2013 WL 6439651 (3d Cir. Dec. 10, 2013) (finding specifically that "a reasonable official would not have believed that an individual's liberty interest in reputation would be violated by disclosing the contents of a personnel file pursuant to a signed waiver and release").

  Taking the allegations in this case as true, a reasonable official would have known that making the alleged statements was stigmatizing and known that such stigmatization without an opportunity for a name-clearing hearing is a constitutional violation. The close question is whether a reasonable official would have known that the Pre-Disciplinary Conference was insufficient (if indeed it was). It is not clear what Defendants knew about how extensive the reputation damage was or whether it was reasonable to think the hearing and termination letter could successfully counteract the stigma. Plaintiff's complaint is not especially vague or abstract about the violation, but *Thomas v. Independence Twp.* admonishes district courts to resolve qualified immunity before discovery if possible and order a more definite statement where the complaint is specific enough for pleading requirements but not specific enough to assess qualified immunity.

463 F.3d 285, 299-302 (3d Cir. 2006). Because the Court is giving Plaintiff leave to amend the complaint in other respects anyway, it will also instruct Plaintiff to amend the allegations to provide greater specificity relevant to determination of the qualified immunity issue. If Defendants still believe the immunity applies after seeing the amended complaint, they may move to dismiss again and the parties can brief the issue more thoroughly. Ultimately of course, it may be necessary to proceed to discovery and resolve qualified immunity at a later stage, *see Thomas*, 463 F.3d at 301. At this point, then, Count II must be dismissed with prejudice against the Department; the official-capacity claims are not dismissed although they will be limited to genuinely prospective injunctive relief to curtail continuing constitutional violation; and the individual-capacity claims will not be dismissed, but Plaintiff will be ordered to provide a more definite statement with respect to the qualified immunity question, by way of amending the complaint.

Count III: Violation of the PHRA against All Defendants

The PHRA claim is even more restricted by the Eleventh Amendment than the §1983 claim. Plaintiff resists that conclusion only by reasserting his previous arguments. As noted, *Monell* is inapplicable. Further, even the exception for seeking prospective injunctive relief from officials in official capacity applies only to violations of *federal* law. *See Chester Upland Sch. Dist. v. Pennsylvania*, 861 F. Supp. 2d 492, 513 (E.D. Pa. 2012) (quoting *Pennhurst*, 465 U.S. at 106). As the PHRA is state law, a claim thereunder does not fit into the *Ex parte Young* exception. *See Nelson v. Com. of Pa. Dep't of Pub. Welfare*, 244 F. Supp. 2d 382, 391-92 (E.D. Pa. 2002). The Eleventh

Amendment, therefore, bars all of Count III except the individual-capacity claims asserted against Wenerowicz and Romascavage.

Attacking the individual capacity claims, Defendants argue Wenerowicz cannot be held liable because he was complying with state law. Their only citation is to *Pennhurst*'s explanation of why state law does not implicate the *Ex parte Young* exception. So not only does the citation fail to create a simple "complying with state law" defense as Defendants imply, the entire discussion cited is in the context of *official-capacity* claims. *See Pennhurst*, 465 U.S. at 105-06. Defendants cannot derive immunity from the Eleventh Amendment, through *Pennhurst* or otherwise, for the individual-capacity PHRA claims. *See Burda v. Pennsylvania Dep't of Corr.*, 4:11-CV-0500, 2013 WL 393443 (M.D. Pa. Jan. 4, 2013), *report and recommendation adopted*, 4:11-CV-500, 2013 WL 393398 (M.D. Pa. Jan. 31, 2013), *aff'd*, 13-1608, 2013 WL 6233948 (3d Cir. Dec. 3, 2013); *Irizarry v. Com. of Pa., Dep't of Transp.*, CIV. A. 98-6180, 1999 WL 269917 (E.D. Pa. Apr. 19, 1999).

That said, the PHRA imposes individual liability only in narrow circumstances. As Defendants note, "[l]iability under [the PHRA] attaches only to supervisory employees." *Miles v. City of Phila.*, CIV.A. 11-4040, 2013 WL 125186 (E.D. Pa. Jan. 10, 2013). But the phrase "supervisory employees" is really a shorthand for the more nuanced analysis found in the authority for the *Miles* court's assertion, *Dici v. Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996). Only the "employer" is liable for discrimination under the PHRA, but the law also extends liability to "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful

15

discriminatory practice," with the unlawful act being the discrimination on the part of the employer itself. *Id.* (quoting 43 Pa. C.S.A. § 955(e)). Generally, only a supervisor "can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." *Carlton v. City of Phila.*, CIV.A. 03-1620, 2004 WL 633279 (E.D. Pa. Mar. 30, 2004). But it is not the formality of being a "supervisor" that matters; it is whether the individual defendant is in a position to be integral to the employer's discriminatory action. In *Dici*, the issue was specifically whether the individual defendant had a role in the employer's failure to respond to harassment. *Dici*, 91 F.3d at 552-53.

Here, while Romascavage may not technically be supervisory, Plaintiff alleges he had a major role and position of authority in the Department's actions with regard to Plaintiff. Romascavage orchestrated the unemployment proceedings and participated in the Pre-Disciplinary Conference, not merely as a coworker and witness, but as a questioner on behalf of the Department. Those allegations are sufficient to ground potential individual liability for Romascavage at this stage. There is no dispute that Wenerowicz was a supervisor, participated in the conference, and signed off on the termination.[6]

Defendants further argue that the Department is a necessary party to pursuit of the individual claims. The cases hold only that discrimination by the employer itself is a necessary element of an individual claim for aiding and abetting discrimination. *See Heneghan v. Northampton Cmty. Coll.*, 801 F. Supp. 2d 347, 362-63 (E.D. Pa. 2011), *aff'd*, 493 F. App'x 257 (3d Cir. 2012). Plaintiff can attempt to prove discrimination by the Department as an element of his individual claims without the Department's

---

[6] Plaintiff's brief contains a footnote stating that Secretary Wetzel's supervisory status is undisputed. That may be, but there is no individual-capacity claim asserted against Wetzel, and indeed he appears to have had no direct role in the case beyond his official position.

16

participation as a party. Finally, exhaustion is not a barrier at this point as discussed above. The individual-capacity claims against Romascavage and Wenerowicz survive; the remainder of Count III is dismissed with prejudice.

Counts IV and V: Defamation and Intentional Infliction of Emotional Distress against Romascavage

The final two counts of Plaintiff's complaint may be addressed together as the same analysis shows both are blocked by sovereign immunity. Though Plaintiff points to a misstatement by Defendants to the effect that sovereign immunity immunizes state officials only in their official capacities, it is clear that the capacity in which a Defendant is sued is not the proper question; rather, sovereign immunity protects "the Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa. C.S.A. §2310; *see also Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) ("Sovereign immunity also applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting with the scope of their duties.'" (quoting *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995))).

The remainder of Plaintiff's argument misunderstands what it means for an employee to be acting within the scope of his duties. Pennsylvania courts look to the Restatement (Second) of Agency to analyze scope of duty. *See Iandiorio v. Kriss & Senko Enters., Inc.*, 517 A.2d 530, 536 (Pa. 1986); *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. 1989). Section 228 provides, in relevant part:

(1) Conduct of a servant is within the scope of employment if, but only if:

      (a) it is of the kind he is employed to perform;

      (b) it occurs substantially within the authorized time and space limits;

      (c) it is actuated, at least in part, by a purpose to serve the master…

    …

    (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency §228 (1958). Commenting on another employee may be within the scope of employment under §228. *See Brumfield v. Sanders*, 232 F.3d 376, 380-81 (3d Cir. 2000) (noting, where plaintiff's claims were based on statements made by coworkers in an investigation of his conduct, that there was no dispute as to §228(1)(a) and (b), and finding that defendants' responses to the investigation at the employer's request were actuated by a purpose to serve the employer, even though defendants may have had other motives as well).

    Further, even an employee not doing what he or she is actually supposed to do may remain within the scope of employment. "An act, although forbidden, or done in a forbidden manner, may be within the scope of employment." Restatement (Second) of Agency at §230. This provision "includes specifically forbidden acts and forbidden means of accomplishing results." *Id.* at §230 cmt. b.; s*ee also Brumfield*, 232 F.3d at 381 (noting that although the employer required the defendants to respond truthfully in the investigation of the plaintiff, even answering questions falsely was within the scope of employment); *Aliota v. Graham*, 984 F.2d 1350, 1358-59 (3d Cir. 1993) (finding, in another case involving coworker defamation, that the defendants' statements to a third

party regarding the plaintiff's dismissal were within the scope of employment even though the employer had instructed defendants not to answer questions on the topic and to refer all questions to the plaintiff).

Plaintiff's insistence that it cannot be within the scope of employment "for Defendant Romascavage to engage in such gross violations of the law and [the Department's] own policies and practices" is, therefore, mistaken. It is clear from the complaint that Romascavage's job as personnel officer included handling Plaintiff's unemployment proceedings and disciplinary hearing. Those tasks necessarily involve describing the reasons for Plaintiff's suspension and termination, so even misstatements or outright lies in the course of doing so are within Romascavage's scope of employment. Even potential statements made to other employees, outside the unemployment or conference contexts, are bound up with Romascavage's activities as a personnel officer, even if he had been instructed not to talk about Plaintiff to other employees. All of Romascavage's conduct that grounds the final two claims was clearly within the scope of his employment, so sovereign immunity compels dismissal of Counts IV and V with prejudice.

Conclusion

In sum, the Title VII claim will be dismissed without prejudice, and Plaintiff may amend to bolster the basis for a discrimination claim. The §1983 claim will be dismissed with prejudice as to the Department of Corrections; it will not be dismissed as to the individual defendants, but the official-capacity claims are limited and Plaintiff will be ordered to amend the allegations to better frame the qualified immunity issue. The PHRA

claim will be dismissed with prejudice except for the individual-capacity claims against Wenerowicz and Romascavage. Finally, the defamation and intentional infliction of emotional distress claims against Romascavage will be dismissed with prejudice.