IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REVEREND ROBERT W. POVISH,<br><br>                Plaintiff,<br><br>       v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, JOHN E. WETZEL, in his official capacity as Secretary of the Pennsylvania Department of Corrections, MICHAEL WENEROWICZ, in both his official capacity as Superintendent of the State Correctional Institution at Graterford, and in his individual capacity, and MICHAEL ROMASCAVAGE, in both his official capacity as personnel officer of the State Correctional Institution at Graterford, and in his individual capacity,<br><br>                Defendants. | CIVIL ACTION<br>NO. 13-0197 |

### MEMORANDUM

**SCHMEHL, J.**                                                                                         **August 19, 2014**

Plaintiff, a former chaplain with the Pennsylvania Department of Corrections, brings suit against the Department and several individuals, based on alleged defamation and religious discrimination in connection with his termination. The Court previously issued an opinion in this matter concerning an earlier motion to dismiss; while a few elements of the case have been clarified somewhat, little enough has changed that the Court will rely on the description and facts of the case as set forth in its prior opinion. The prior ruling allowed amendment of Plaintiff's Title VII discrimination claim, called for amendment to better frame the qualified immunity issue with respect to the §1983 claim for liberty interest in reputation, and left open individual-capacity PHRA claims against two defendants. Plaintiff amended his complaint, and Defendants again moved to

dismiss. For reasons discussed below, the Court will now dismiss the Title VII and PHRA claims but continue to leave the §1983 claim open and qualified immunity undecided.

Discrimination Claims

Count One, under Title VII, and Count Three, under the PHRA, rely on the same allegations of disparate treatment and disparate impact, and they stand or fall together.[1] *See Jones v. School Dist. Of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (indicating that disparate treatment claims under Title VII and the PHRA are analyzed under the same framework). Here, both counts fail. In Plaintiff's effort to improve his disparate treatment claims, he has essentially been forced to recast them as disparate impact claims, but the latter are both procedurally barred and substantively unsound.

As noted in the prior opinion, Plaintiff's original theory of disparate treatment was unclear. Either he was discriminated against as a Roman Catholic because he was fired after being unfairly tarnished by the publicized bad conduct of other Roman Catholic priests (a weak theory largely because he was replaced by another Roman Catholic), or he was terminated under circumstances where others were permitted to continue their employment and perform administrative duties (an insufficient theory because he offered no specific comparators). The issue now focuses on the job

---

[1] The Court should perhaps have dismissed the PHRA claims without prejudice along with the Title VII claims on the prior motion to dismiss, but after addressing the parties' arguments focused on Eleventh Amendment immunity, supervisory liability, and whether individual liability could be imposed without the employer itself being a party to the claim, the Court neglected to address the underlying insufficiency of the PHRA claims. Regardless, Plaintiff did amend in an attempt to improve the Title VII claims, and the parties have considered the Title VII and PHRA claims together in briefing the present motion, so there is no harm in the Court addressing the basic viability of the PHRA claims now.

requirement that chaplains have some form of "official sanction" from their denominations to perform religious chaplaincy work.

Plaintiff used his leave to amend to add allegations regarding several individuals he argues serve as comparators, but the theory is still confusing. Plaintiff now apparently alleges disparate treatment in that "similarly situated comparators . . . were either required to produce lesser documentation of their 'official sanction' or, in some cases, no documentation at all."[2] Framed that way, it is conceivably a disparate treatment claim in that different policies were applied to chaplains of different faiths. Even accepting that framing, however, the comparators he identifies at ¶¶ 128-134 of the Amended Complaint do not make his case. None of them had their sanction revoked by any type of religious authority, so there are no allegations to show how Defendants treated a person of a different faith in that situation. Plaintiff alleges some comparators showed only a general sanction and never provided local certification and argues that is equivalent to his situation when the archdiocese removed his authority but he retained his general priesthood status. But there is a significant difference between an employee who presents one set of credentials that are never questioned and an employee who presents a different set of credentials and is later suspended by an entity of some apparent authority within the credentialing institution. That difference is especially pertinent in light of the purpose of comparator analysis, which is to raise a plausible inference of discrimination. *See Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). It is implausible to infer from the mere existence of employees with less exhaustive credentials that when the employer took action against Plaintiff, whose credentials were partially revoked, it did so out of prejudice against his religion. As noted in the previous

---

[2] Plaintiff's Brief (Docket #35) at 23.

opinion, that implausibility is accentuated by the selection of another Catholic to replace Plaintiff.

Moreover, according to Plaintiff's own allegations, each of the comparators was indeed required to have "official sanction by the appropriate faith group to practice as a religious leader"; therefore, the policy applied to each of them appears to have been the same. The source of any variation in the policy is clearly in the various faiths' rules and structures, not in the decisions or actions of the Defendants. Consequently, the variation is in the policy's *effect* rather that its content. Plaintiff stresses that the "official sanction" requirement is vague, but it is vague specifically because it is neutral and lets the various faith groups fill in the blanks. The only plausible way to understand the situation is that Defendants let the faith groups determine the specific content of the requirement; Defendants did not themselves come up with multiple versions of the requirement. The policy applied to all was the same, though the effects of the policy may have varied due to differences in the faith groups' structures.

Accordingly, the only reasonable way to understand the problem with the proffered comparators is to recognize that they do not support framing the issue as disparate *treatment* at all. Each comparator had the official sanction requirement, and they each satisfied that requirement in a different way. Plaintiff focuses on the fact that, as a Roman Catholic, he apparently needed sanction at *two* levels: permission from the local archdiocese plus general ordination as a priest (the latter requirement being an inference from his insistence that he can perform the job because he has not been defrocked). This is a disparate *impact* claim, the basic form of which challenges policies that "are facially neutral in their treatment of different groups but that in fact fall more

4

harshly on one group than another." *Foxworth v. Pa. State Police*, 228 F. App'x 151, 155-56 (3d Cir. 2007) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). Here, Defendants have one policy applied to all that requires official sanction according to each chaplain's faith's structure or rules, and that policy arguably requires more of Catholics as a consequence of their faith's multi-level organization.

The disparate impact theory is actually stronger and fits the circumstances of this case more logically than the disparate treatment claim. Essentially, the Court instructed Plaintiff to improve his disparate treatment allegations, and in revisiting the allegations (which as noted were never entirely coherent), Plaintiff was unable to form a disparate treatment claim and instead presented his case as a disparate impact claim (in allegations if not in phrasing). Any purported claim for disparate treatment has proven ineffective and will be dismissed.[3] Unfortunately for Plaintiff, the impact claim fails as well for several reasons.

First, on a disparate impact claim, part of a plaintiff's "*prima facie* showing requires the plaintiff to prove a significant statistical disparity" in the effect that the facially neutral policy has on different protected groups. *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011). This is a demanding requirement for plaintiffs because the statistics must be sufficient to show causation as well. *Foxworth*, 228 F. App'x at 156 ("the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for

---

[3] The simple fact that Plaintiff cannot truly establish that he "was qualified for the position that he sought to retain," a basic element of a *prima facie* case of employment discrimination prior to even considering whether comparators imply discrimination, might serve as an alternate basis on which to dismiss his claims. *See Greene*, 557 F. App'x at 195. Because the alleged disparate treatment specifically involves the application of the job requirements, however, it is best if the decision does not rest directly on that foundation.

jobs or promotions because of their membership in a protected group ... [and] statistical disparities must be sufficiently substantial that they raise such an inference of causation") (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988)). Plaintiff here has not attempted to offer such statistical allegations, and it is unreasonable to expect he will be able to do so, especially given the limited comparator-type allegations he has generated after the opportunity to amend.

Even if Plaintiff overcame that hurdle, Defendants could defeat his claim "by demonstrating that the challenged practice is 'job related for the position in question and consistent with business necessity.'" *N.A.A.C.P.*, 665 F.3d at 477 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)). Though that analysis may be too involved to be resolved on the present record and briefing, and plaintiffs may respond by identifying a less discriminatory alternative policy, *see id.*, it is worth noting that requiring differing permissions from different faith groups seems obviously job-related when the job is to act as a chaplain of a particular faith. Further, Defendants' arguments about the business necessity of keeping the Department from becoming too entangled with the internal rules and hierarchies of various faith groups are quite persuasive.

Plaintiff's disparate *impact* claims are also procedurally barred in two ways. First, it is apparent from the EEOC charge in this matter that Plaintiff did not raise disparate *impact* claims in those proceedings, and has therefore failed to exhaust his administrative remedies with respect to disparate impact claims. *See Ptasznik v. Univ. of Pennsylvania*, CIV.A. 10-3941, 2012 WL 699455 (E.D. Pa. Feb. 29, 2012) (finding a failure to exhaust with specific respect to disparate impact claims and focusing on whether "Plaintiff *himself* raised the issue" rather than the mere possibility that the EEOC investigated the

6

issue (emphasis in original)), *aff'd*, 523 F. App'x 156 (3d Cir. 2013) (specifically addressing the disparate impact exhaustion issue and agreeing with the lower court). Plaintiff's EEOC charge states: "No other religious minister is required to have permission from their faith leadership to be employed as a Chaplin. Non-religious employees, for whom legal claims, including criminal charges, are pending, are not suspended or terminated." This is clearly treatment, not impact, as it describes a rule or policy that he claims was applied to him and not to others. It is also, incidentally, contrary to his present allegations. In a separate letter, Plaintiff notes: "it is my belief that as a Catholic Chaplain, I was held to a higher standard of employment than other Chaplains working at the same facility." This phrasing could fit better with the impact claim he now raises, but it immediately follows the statement: "Because of negative publicity being generated in the news media about Catholic Priests, it is my belief that the decision to fire me was based on religious discrimination directed at Roman Catholics and because of my Catholic affiliation." That expresses the issue as directed discrimination rather than neutral policies with disparate impact, and as in *Ptasznik*, the charge and letter "discussed [Defendants'] actions only in so far as they affected" Plaintiff and contained "no reference to allegations of other similarly-situated employees being harmed by facially-neutral policies." 523 F. App'x at 161 (internal quotation marks omitted). Therefore, Plaintiff clearly did not exhaust his administrative remedies with respect to his disparate treatment claims.

Second, Plaintiff's addition of a disparate impact claim goes beyond the scope of the original complaint and the amendment permitted by the Court's prior Memorandum and Order. Plaintiff's reference to ¶¶ 72 and 100 of the original complaint in an attempt

to show the issue was raised is completely unavailing. Those paragraphs are generic and do not include disparate impact allegations or theories. The issue of disparate impact was not the subject of any argument within the prior motion to dismiss or this Court's opinion because the issue was simply not before the Court. Moreover, the Court's opinion clearly recognized Plaintiff's theory as "disparate treatment [in] his termination under circumstances where others were permitted to continue their employment and perform administrative duties," noting that "Plaintiff has offered no specifics whatsoever regarding who these others were or how they were similarly situated." The Court allowed Plaintiff a chance to amend "and provide sufficiently specific allegations to support a claim *on that basis*" (emphasis added). An attempt to raise a disparate impact claim now contravenes the Court's prior ruling and is especially inappropriate given the age of this case and the completion of discovery.

Both the disparate treatment and disparate impact allegations fail for the above reasons, and Counts I and III must be dismissed with prejudice.

§1983 Liberty Interest in Reputation Claim

The primary issue to be revisited with regard to Count II is qualified immunity because that was the limited basis on which the Court called for amendment of this claim and the original count II was not dismissed (except with respect to the Department). Defendants are really not entitled to a second chance to make other arguments for dismissal of Count II at this point, but the Court will briefly address two of the other issues Defendants raise and then turn to qualified immunity.

The first of those other issues is Defendants' renewed contention that no statements made in the course of the unemployment proceedings can support Plaintiff's claim because those statements are not public and are protected by absolute common law immunity. The Court need not necessarily decide these issues because the fate of Count II does not depend entirely on the unemployment proceeding statements; the Court previously determined that even the vague allegations of gossip were sufficient to survive a motion to dismiss, and that ruling stands. However, Plaintiff should recognize that to survive summary judgment, he will have the burden of establishing, to the requisite standard of review, false, stigmatizing, *publicly made* statements. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 235-36 (3d Cir. 2006). Given that Defendants have now shown the unemployment proceedings in this matter were never made public by appeal or otherwise, Plaintiff will have to rely on either the gossip—which will have to be much more specific as to both who made the statements and their context once we are past the pleading stage—or some statements connected to the unemployment proceedings that are somehow not truly within the umbrella of those proceedings.

Second, Defendants argue the official capacity claims for injunctive relief should be dismissed. The Court is not persuaded, however, that Wetzel and Romascavage cannot possibly provide relevant injunctive relief in this case. Such relief might theoretically involve, for instance, conducting a more thorough name-clearing hearing or issuing some sort of public statement designed to right the damage to Plaintiff's reputation, and the record does not conclusively establish that these Defendants are not empowered to afford relief along those lines.

On this count's primary issue, Plaintiff asserts that "qualified immunity fails at this stage of the proceedings because 'a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense,'" under *Thomas v. Independence Township*, 463 F.3d 285, 289 (3d Cir. 2006). This assertion seems not to recognize that this Court already faced the *Thomas* situation on the previous motion to dismiss and already ordered Plaintiff to amend the complaint to better frame the qualified immunity issue. Nevertheless, *Thomas* and subsequent cases provide little guidance on how to proceed when a more definite statement is ordered and filed but still proves insufficient to analyze qualified immunity. The role of the more definite statement seems to be only to improve the Court's ability to engage in the necessary analysis, not to shift the qualified immunity burden to the Plaintiff. That is, there is no indication that the Court is supposed to hold the failure to be definite enough against the Plaintiff and grant qualified immunity as a kind of penalty. As *Thomas* and this Court's prior opinion note, sometimes the resolution of qualified immunity simply must wait until summary judgment. 463 F.3d at 301.

That seems to be the situation here. Plaintiff has at least improved the relevant allegations in the Amended complaint, if not by a great deal. As noted, the prior opinion found the vague allegations of gossip sufficient at the motion to dismiss stage, so the fact that the Amended Complaint still falls short of expressly alleging the particular Defendants' role in the gossip does not doom Plaintiff's case at this point. But there clearly is still time to debate the qualified immunity issue, and that debate can be better resolved at a later stage, such as summary judgment, not only because of the greater fact development, but because the standard of review changes. If, for instance, Plaintiff cannot even establish that Defendants actually engaged in gossip, he will be unable to

10

support a violation and qualified immunity will be irrelevant. If Plaintiff can establish that Defendants repeatedly engaged in disparaging gossip, knew it had caused a false impression to spread to numerous people, and knew that the termination letter clearing Plaintiff of the relevant accusations would be inadequate to correct the false impression, qualified immunity may be inappropriate. If Plaintiff can establish a violation but the evidence indicates Defendants did not know that the false impression was disseminated or that the letter would be insufficient to counteract that impression, the Court might draw an opposing conclusion as to qualified immunity. While qualified immunity should be decided early because it protects against not only liability but against litigation itself, in this case, discovery is already complete and holding Defendants in the case for summary judgment motions does not impose much additional hardship.

For these reasons, the Court again declines to dismiss Count II, the §1983 liberty interest in reputation claim.